Miriam Equities, LLC v. LB-UBS 2007-C2 Millstream Rd., LLC, 2021 NCBC 71.

STATE OF NORTH CAROLINA

GUILFORD COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
19 CVS 8523

MIRIAM EQUITIES, LLC, a New
Jersey Limited Liability Company,

Plaintiff,

v.

LB-UBS 2007-C2 MILLSTREAM
ROAD, LLC, a North Carolina Limited
Liability Company,

Defendant.

**ORDER AND OPINION ON
DEFENDANT'S MOTION FOR
SANCTIONS**

1.      THIS MATTER is before the Court on Defendant's Motion for Sanctions (the "Motion"), (ECF No. 76), pursuant to Rules 26 and 37 of the North Carolina Rules of Civil Procedure (the "Rule(s)").  After considering the Motion, Defendant's brief in support of the Motion,[1] arguments from counsel for both parties at a hearing held on the Motion on 19 October 2021, and the relevant record, the Court determines that the Motion should be **GRANTED** as more specifically provided below.

*Revolution Law Group, by C. Scott Meyers, for Plaintiff Miriam Equities, LLC.*

*Kilpatrick Townsend & Stockton LLP, by James H. Pulliam and Elizabeth L. Winters, for Defendant LB-UBS 2007-C2 Millstream Road, LLC.*

Earp, Judge.

---

[1] Plaintiff's Response in Opposition to Defendant's Motion for Sanctions was not timely submitted and, consequently, was not considered. (Order on Pl.'s Mot. for Extension of Time ¶¶ 12–13, ECF No. 80.)

## FACTUAL AND PROCEDURAL BACKGROUND

2.     The Complaint in this action was filed on 13 September 2019. (Compl., ECF No. 3.)  In summary, the case is about the attempted sale of commercial property in Guilford County, North Carolina (the "Property") by Defendant to Plaintiff.  The sale fell through when Plaintiff failed to meet the terms required to close by 3 July 2019.  Plaintiff argues that it was prevented from meeting those terms because, contrary to their agreement, Defendant would not allow it to have access to the Property so that it could satisfy conditions necessary to secure funding (the "Access Right").

3.     From 25 August 2020 until a 30(b)(6) deposition on 5 August 2021, Plaintiff has consistently responded to Defendant's discovery requests and made statements in its pleadings that it intended to secure a loan through Ameris Bank to purchase the property, and that access was needed for an appraisal.  However, during Plaintiff's 30(b)(6) deposition, Mr. Sam Sprei, Plaintiff's corporate representative, disavowed that plan and testified for the first time that Plaintiff's intention was to borrow the funds from Bernard Rubin and his partner and not from Ameris Bank (the "alternative funding plan").  (Def.'s Suppl. Br. in Supp. of Mot. for Summ. J. Ex. 1 at 83:24–84:2, 87:25–88:4 [hereinafter "Sprei Deposition"], ECF No. 66.1.)  Bernard Rubin is the father of Jonathan Rubin, a principal in Miriam Equities, LLC.  Mr. Rubin's partner is unidentified.  Thus, Mr. Sprei testified that the requested access was for Bernard Rubin's appraiser, not for an appraiser from Ameris Bank.  (Sprei Deposition 80:5–81:11.)

4.      Defendant objects to Plaintiff's recent disclosure and moves to sanction Plaintiff for failing to reveal the alternative funding plan until the very end of an already extended discovery period.[2] The Motion requests "that Plaintiff be prohibited from introducing any evidence in support of its new theory that Plaintiff intended to obtain funds from Bernard Rubin, or any source other than Ameris Bank, to complete its purchase of the Property." (Br. in Supp. of Def.'s Mot. for Sanctions 2, ECF No. 72.)

#### Plaintiff's History of Noncompliance with Discovery Rules and Orders

5.      Whether Plaintiff's Access Right was breached, and if so, whether damages resulted, are central issues in this case. (Am. Verified Compl. ¶¶ 10–15, ECF No. 5.) The Amended Complaint contends that the breach occurred when Defendant refused entry to the Property for Plaintiff and Plaintiff's agents and contractors to "conduct[] tests[,] . . . site inspections[,] and investigations." (Am. Verified Compl. ¶ 10.) Consequently, the identity of the funding source and the appraiser who was to come on site are important facts in the case. Unfortunately, Plaintiff's failure to abide by the rules and orders of this Court has unfairly delayed the ability of Defendant to determine these facts.

6.      "Defendant properly served its First Set of Interrogatories and Requests for Production of Documents on Plaintiff on July 16, 2020 . . . ." (Order on Mot. to Withdraw and Providing for Limited Modification to Current Am. Case Management Order ¶ 6, ECF No. 40.) Relevant to this Motion, Defendant's Interrogatory No. 2

---

[2] As discussed *infra*, the Court reopened and extended discovery on the Access Right issue because the record was underdeveloped. (ECF No. 59)

asked: "Identify each person who has knowledge of the facts, allegations, and claims asserted in your Amended Verified Complaint." (Br. in Supp. of Def.'s Mot. for Sanctions 2.) Interrogatory No. 6 requested that Plaintiff "[i]dentify all efforts by [it] to borrow or otherwise secure funds to close on the Property." (Br. in Supp. of Def.'s Mot. for Sanctions 3.)

7. In its unverified responses served 25 August 2020, Plaintiff did not list Bernard Rubin, or any person associated with Bernard Rubin, as individuals with knowledge of the facts, allegations, and claims asserted in response to Interrogatory No. 2. (Pl.'s Resps. to Def.'s First Set of Interogs. and Reqs. for Produc. of Docs. 4, ECF No. 51.) Beyond initial objections, Plaintiff responded to Interrogatory No. 6 by stating only that it "had a commitment from Ameris Bank. Miriam paid commitment fees and legal fees related to the commitment from Ameris Bank." (Pl.'s Resps. to Def.'s First Set of Interoggs. and Reqs. for Produc. of Docs. 6.)

8. Bernard Rubin was also not identified in Plaintiff's response to Defendant's requested production of "[a]ll documents and communications regarding Plaintiff's efforts to borrow or otherwise secure funds to close on the Property." (Pl.'s Resps. to Def.'s First Set of Interoggs. and Reqs. for Produc. of Docs. 13.) Moreover, in its brief opposing summary judgment, Plaintiff continued to recognize only Ameris Bank as the financing source for the purchase of the Property. (Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. 7, Ex. 4, ECF No. 47) (discussing the purported loan commitment from Ameris Bank); (Pl.'s Sur-Reply Br. 4, ECF No. 55.1) (arguing

against any unfair surprise to Defendant because Plaintiff "fairly disclosed its financing arrangements with Ameris Bank in its Answers to Interrogatory No. 6.")

9. In fact, Plaintiff has repeatedly represented that it *could not close* on the purchase of the Property without the Ameris Bank funding. (*See e.g.*, Jonathan Rubin Aff. ¶¶ 8, 11, ECF No. 47.3; Eli Shapiro Aff. ¶ 11, ECF No. 47.2.) In summary, throughout this litigation and until the 30(b)(6) deposition on 5 August 2021, Plaintiff never suggested that it had relied in any way on the alternative funding plan.

10. Plaintiff's attempt to fault Defendant for waiting too long to conduct the 30(b)(6) deposition at which the alternative funding plan was disclosed is specious. Defendant properly noticed Plaintiff's Rule 30(b)(6) deposition for 24 August 2020, a year before it ultimately took place. At Plaintiff's urging, Defendant agreed to reschedule the deposition to accommodate Plaintiff's and its counsel's schedules, resulting in a joint motion to extend discovery. (Joint Mot. for Limited Modification of Am. Case Management Order, ECF No. 24.) Even so, Plaintiff's representative did not appear at the rescheduled deposition on 28 October 2020. (Order on Mot. to Withdraw and Providing for Limited Modification to Current Am. Case Management Order ¶ 2.) Plaintiff's first counsel withdrew shortly thereafter. (Mot. to Withdraw, ECF No. 36.)

11. In recognition of Plaintiff's stated desire to obtain new counsel, and "to assure that it consider[ed] any dispositive motion upon a closed record[,]" the Court afforded Plaintiff time to obtain new counsel and "*a last opportunity to provide Defendant any information* Plaintiff contends should be considered in support of its

claims . . . ." (Order on Mot. to Withdraw and Providing for Limited Modification to Current Am. Case Management Order ¶ 3) (emphasis added.) On 3 November 2020 this Court specifically directed Plaintiff to "file a notice of appearance of counsel, respond to Defendant's outstanding discovery requests, and advise whether it intended to appear for deposition pursuant to a [Rule] 30(b)(6) notice" by 20 November 2020. (Order ¶ 2, ECF No. 41.) Notably, "Plaintiff . . . completed none of these actions" within the ordered timeframe. (Order ¶ 2, ECF No. 41.)

12.    Therefore, on 30 November 2020 the Court ordered that discovery was closed and set the schedule to brief dispositive motions. (Order ¶ 4, ECF No. 41.) Defendant timely moved for summary judgment on 18 December 2020. (Mot. Summ. J., ECF No. 42.) Plaintiff's responsive materials continued to describe only financing from Ameris Bank—subject to an inspection of the Property. (*See* Pl.'s Br. in Opp. to Def.'s Mot. for Summ. J. 7.) Plaintiff's briefing did not mention Bernard Rubin or the alternative funding plan.

13.    Plaintiff's separate counsel withdrew on 8 October 2020 and on 30 October 2020—leaving it unrepresented for a period of time during the latter part of discovery. (ECF Nos. 32, 40.) Given the unique procedural history presented by Plaintiff's discovery failures and the withdrawal of counsel on three occasions, the Court found that "the record was underdeveloped with respect to the Plaintiff's contractual right of access to the property." (Order on Pl.'s Mot. for Leave to File Surreply Br. and Modification of the Current Am. Case Management Order ¶ 3, ECF No. 59.) Therefore, on 27 May 2021 the Court reopened discovery through 26 July

2021 and ordered the parties to focus only on the Access Right issue. (Order on Pl.'s Mot. for Leave to File Surreply Br. and Modification of the Current Am. Case Management Order ¶ 3.) Supplemental briefing on the Access Right issue was due from Defendant on 25 August 2021 and from Plaintiff thirty (30) days after receipt of service of the supporting brief. (Order on Pl.'s Mot. for Leave to File Surreply Br. and Modification of the Current Am. Case Management Order ¶¶ 3, 5.)

14. On 6 July 2021 Plaintiff finally produced documents in response to Defendant's requests *for the first time* in this matter. The requests had been pending since 16 July 2020. None of the documents produced by Plaintiff identified Bernard Rubin and his partner as a source of funding. Once again, only Ameris Bank was identified. Plaintiff's 30(b)(6) deponent testified that this was because Plaintiff considered this information to be "irrelevant." (*See* Br. in Supp. of Def.'s Mot. for Sanctions 6; Br. in Supp. of Def.'s Mot. for Sanctions Ex. 1 at 92:18–93:12, 102:3–103:12, ECF No. 72.1)[3]

15. On the same day, Defendant noticed Rule 30(b)(6) depositions for both Plaintiff and Ameris Bank to take place within the newly extended discovery period. Plaintiff, however, notified Defendant the day before its scheduled deposition that it could not proceed and that the Ameris Bank deposition would also have to be moved. (Order on Pl.'s Mot. for Limited Extension of Disc. ¶¶ 3–4, ECF No. 63.) The Court subsequently granted a short extension until 13 August 2021 to allow for the Rule

---

[3] Documents produced with the Plaintiff's response to Defendant's document requests are not in the record; however, Plaintiff has not disputed Defendant's representation regarding the substance of Plaintiff's response.

30(b)(6) depositions of Plaintiff and Ameris Bank and ordered Plaintiff to pay for the costs of the delay. (Order on Pl.'s Mot. for Limited Extension of Disc. ¶ 5.) By its failures, then, Plaintiff was successful in delaying the deposition of its 30(b)(6) witness for nearly a year, until the very end of an extended discovery period.

16. Meanwhile, Plaintiff never supplemented its responses to written discovery to identify any funding source other than Ameris Bank.

17. At Plaintiff's Rule 30(b)(6) deposition, which finally occurred on 5 August 2021, Mr. Sam Sprei, its representative, surprised Defendant when, for the first time, he stated on behalf of Plaintiff, "[w]e did not need the funds from Ameris Bank. We had the funds available." (Sprei Deposition 83:24–84:2.) He added, ". . . I wasn't focusing on Ameris Bank I wasn't relying [sic]. I was more relying on the Rubin family closing the deal than Ameris." (Sprei Deposition 87:25–88:4.) Mr. Sprei characterized the Ameris Bank funding as a refinancing option and identified Bernard Rubin and his partner as the primary source of the funds necessary to finance the closing. (*See* Sprei Deposition 83:24–84:2.)

18. On 9 September 2021, the Court once again granted Plaintiff's counsel's Motion to Withdraw. (Order on Mot. for Leave to Withdraw as Counsel, ECF No. 70.) The Court extended deadlines to allow Plaintiff until 17 September 2021 to retain new counsel and to file a Notice of Appearance. (Order on Mot. for Enlargement of Time for Pl. to File Pending Docs. ¶ 7, ECF No. 71.) The Court afforded both parties

until 24 September 2021 to brief their positions with respect to Defendant's Motion for Sanctions.[4]

19.     Once again, Plaintiff failed to comply with an order of this Court.  First, Plaintiff's current counsel did not file a Notice of Appearance until 27 September 2021.  (ECF No. 73.)  Then, Plaintiff attempted to file briefs opposing sanctions and Defendant's supplemental brief on 8 October 2021, each outside the Court's deadline for those filings.  The Court found Plaintiff's late-filed Motion for Extension of Time did not reflect excusable neglect for failure to comply with the established deadlines and denied the motion.  (Order on Pl.'s Mot. for Extension of Time, ECF No. 80.)

ANALYSIS

20.     "The purpose of discovery is to remove surprise from trial preparation and enable the parties to obtain evidence necessary to evaluate and resolve their dispute." *Dove v. Harvey*, 168 N.C. App. 687, 693 (2005) (citation omitted).

21.     Rule 37(d) of the North Carolina Rules of Civil Procedure allows for sanctions "[i]f a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) . . . fails . . . to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories, or [fails] . . . to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request . . . ." N.C.G.S. § 1A-1, Rule 37(d).  If such a violation occurs, "the court in which the action is pending on motion may make such

---

[4] The Court maintained 24 September 2021 as the deadline for any response from Plaintiff with respect to Defendant's Supplement Brief in Support of its Motion for Summary Judgment.  (Order on Mot. for Enlargement of Time for Pl. to File Pending Docs. ¶ 7.)

orders in regard to the failure as are just, and among others it may take any action authorized under subdivisions a, b, and c of subsection (b)(2) of [Rule 37]." *Id.*

22.     Pursuant to Rule 37(b)(2), sanctions for a disobedient party include, among other things, "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the party from introducing designated matters in evidence . . . ." N.C.G.S. § 1A-1, Rule 37(b)(2)(b).

23.     A court order compelling discovery is not a prerequisite to the imposition of a sanction under Rule 37(d).  *Myers v. Myers*, 269 N.C. App. 237, 252 (2020) (explaining that Rule 37(d) contemplates circumstances where a court order is not required before sanctions can be imposed); *Pugh v. Pugh*, 113 N.C. App. 375, 379 (1994); *First Citizens Bank & Trust Co. v. Powell*, 58 N.C. App. 229, 230 (1982).  Nor could it be when, as here, the information at issue has been effectively secreted such that the party seeking discovery could not reasonably have known to ask for court intervention.[5]

---

[5] To be sure, while violation of a court order is not necessary, sanctions may certainly be imposed when a party or designated representative "fails to obey an order to provide or permit discovery . . . or if a party fails to obey an order entered under Rule 26(f)[,]" because "a judge of the court in which the action is pending may make such orders in regard to the failure as are just . . . ." N.C.G.S. § 1A-1, Rule 37(b)(2).

Here, Plaintiff failed to comply with the Court's 3 November 2020 Order expressly permitting it "a last opportunity" to supply Defendant with information that "should be considered in support of its claims," among other directives. (Order on Mot. to Withdraw and Providing for a Limited Modification of the Current Am. Case Management Order ¶ 3.)  Plaintiff also violated the Court's 27 May 2021 Order reopening discovery on the Access Right issue through 26 July 2021. (Order on Pl.'s Mot. for Leave to File Surreply Br. and Modification of the Current Am. Case Management Order ¶¶ 3, 5.)  At the very least, Plaintiff had a duty to supplement its previous responses to include the alternative funding plan, and it did not.

24.     To utilize the enforcement mechanism that is Rule 37, the moving party must establish a basis for sanctions within the Rule. *Pugh*, 113 N.C. App. at 379–80. The trial court considers whether the non-moving party's failures were justified, and if not, it may impose appropriate sanctions. *Id.* at 380–81. "[T]he choice of sanctions is within the discretion of the trial court and will not be overturned absent an abuse of discretion." *Id.* at 381.

25.     Defendant has met its burden to establish a basis for sanctions. Plaintiff repeatedly failed to respond to Defendant's discovery requests completely and accurately in violation of Rules 33, 34, and 37(d). It did not appear for a properly noticed 30(b)(6) deposition and then delayed its appearance after the Court reopened discovery. It represented in its opposition brief that funding was to come from Ameris Bank. It filed two affidavits, including one from Bernard Rubin's son, Jonathan Rubin, maintaining that the deal could not close without Ameris Bank funding. Now Plaintiff claims that it had a different plan all along. The Court will not countenance this bait-and-switch behavior.

26.     Plaintiff's failure to reveal its plan to rely on funding from Bernard Rubin and his partner, whether done intentionally or negligently, was not justified. It had the effect of misleading Defendant into focusing its defense on whether Ameris Bank required access to the building on 2 July 2019 and, if so, whether failure to provide that access prevented the closing. Having failed to timely disclose in discovery its intent to rely on Bernard Rubin and his partner for funding and having instead repeatedly named Ameris Bank as the source of funding necessary for the

closing, Plaintiff will not be permitted to change its position at this late stage. Therefore, under the circumstances presented here, the Court finds, in its discretion, that the prohibition of any evidence supporting Plaintiff's alternative funding plan or, indeed, any funding plan other than a loan from Ameris Bank, is an appropriate sanction under Rule 37(d).

27.    Additionally, trial courts retain the inherent authority to sanction parties that is "separate and apart" from Rule 37. *Red Valve, Inc. v. Titan Valve, Inc.,* 2019 NCBC LEXIS 57, at *40 (N.C. Super. Ct. Sept. 3, 2019), *aff'd per curiam*, 2021 N.C. LEXIS 177 (N.C. Mar. 12, 2021). "[T]he power to sanction disobedient parties, even to the point of dismissing their actions or striking their defenses, . . . is longstanding and inherent." *Id.* at *39 (quoting *Minor v. Minor*, 62 N.C. App. 750, 752 (1983)) (alterations in original).

28.    In determining the appropriate sanction, a trial court "may consider the entire record before it." *Id.* at *42 (citing *Ray v. Greer*, 212 N.C. App. 358, 363 (2011)). Moreover, "[w]hen sanctioning a party under its inherent authority, the court must weigh the circumstances of each case and choose a sanction that, in the court's judgment, 'properly takes into account the severity of the party's disobedience.' " *Id.* (quoting *Out of the Box Developers, LLC v. LogicBit Corp.*, 2014 NCBC LEXIS 7, at *10 (N.C. Super. Ct. Mar. 20, 2014)) (alteration in original). As stated above, Plaintiff's record of noncompliance in this case is significant.

29.    When considering the sanction, the Court is mindful that "except in proper instances, a party to a suit should not be allowed to change his position with

respect to a material matter in the course of litigation because a 'a party cannot swap horses in midstream.'" *In re Se. Eye Center-Pending Matters*, 2021 NCBC LEXIS 43, at *31 (N.C. Super. Ct. Apr. 26, 2021) (quoting *Whiteacre P'ship v. BioSignia, Inc.*, 358 N.C. 1, 26 (2004)) (citation and quotation marks omitted).

30. Here, the attempted horse-swapping is not occurring midstream. Instead, and worse, the horse-swapping is being attempted after the horses have reached the far bank of the stream. Throughout the pendency of this litigation Plaintiff has not revealed its alternative funding plan—despite Defendant's efforts to discover the facts. Accordingly, Plaintiff will not now be permitted to use this evidence to its advantage.

31. "North Carolina courts do not presently require the party requesting sanctions to demonstrate, as a part of its burden, that it suffered prejudice as a result of the opposing party's discovery failures or that the opposing party acted willfully." *Red Valve, Inc.*, 2019 NCBC LEXIS 57, at *41 (*quoting Tumlin v. Tuggle Duggins P.A.*, 2018 NCBC LEXIS 51, at *31 (N.C. Super. Ct. May 22, 2018)) (quotation marks omitted). However, "[w]illfulness, bad faith, or prejudice to another party" can impact the trial court's discretion when identifying the proper sanction. *Id.* at *41–42 (*quoting Out of the Box Developers*, 2014 NCBC LEXIS 7, at *9) (alteration in original).

32. The Court finds that Defendant in this case has shown that it has been prejudiced—indeed, effectively prevented from determining the facts—by Plaintiff's failure to disclose its alternative funding plan until the very end of (reopened)

discovery. Moreover, the pattern of failures on the part of Plaintiff in this matter strongly suggests willfulness and bad faith. Accordingly, exclusion of the evidence of the alternative funding plan or any funding plan other than a loan from Ameris Bank is an appropriate and reasonable sanction. *See Red Valve, Inc.*, 2019 NCBC LEXIS 57, at *61–69 (striking a defendant's answer and entering default for more severe disobedience).

33. Finally, Rule 37 provides that "the court shall require the party failing to act to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." N.C.G.S. § 1A-1, Rule 37(d). The Court finds that Plaintiff's misconduct was not substantially justified, and the circumstances here do not make an award of reasonable expenses related to this Motion unjust.

34. For these reasons Defendant's Motion for Sanctions is **GRANTED**, and the Court, in the exercise of its discretion, hereby **ORDERS** as follows:

   a. Plaintiff shall not be permitted to present evidence or argument regarding its intention to utilize funding from Bernard Rubin and his partner (i.e., the alternative funding plan) or any source other than Ameris Bank.

   b. Defendant is awarded its expenses with respect to this Motion, including reasonable attorney's fees. Defendant is directed to file an affidavit and other supporting materials for the Court's use in

determining the appropriate amount of the award within ten days from entry of this Order.

This the 1st day of November, 2021.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases